*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| *CLAIRE BROWN,*             ) | |
| )                           | |
|         *Plaintiff*         ) | |
| )                           | |
| *v.*                        )  | Docket No. 05-158-P-DMC |
| )                           | |
| *CROWN EQUIPMENT CORPORATION,* ) | |
| )                           | |
|         *Defendant*         ) | |

### *MEMORANDUM DECISION ON MOTION TO STRIKE DEFENDANT'S EXPERT*[1]

The plaintiff, Claire Brown, asks the court to strike an expert witness identified by the defendant, Crown Equipment Corporation. Amended Motion to Strike Defendant's Expert, Jeffrey J. Croteau, etc. ("Motion") (Docket No. 32) at 1. In the alternative, the plaintiff asks that the witness be precluded from testifying about the substance of the defendant's supplemental disclosure with respect to his opinion. *Id*. at 2. The plaintiff bases her motion on the alleged insufficiency of the defendant's initial Croteau disclosure, the fact that the defendant presented a supplemental Croteau disclosure only after taking the deposition of the plaintiff's expert witnesses, the allegation that the supporting information provided with the supplemental designation was insufficient and the allegation that the supplemental designation presents "a fundamental new expert opinion on the eve of trial." *Id*. at 1-2.

Apparently on February 14, 2006, Motion at 3, The Defendant, Crown Equipment Corporation's Memorandum in Opposition to the Plaintiff's Amended Motion to Strike ("Opposition")

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge David M. Cohen conduct all proceedings in this case, including trial, and to order the entry of judgment.

1

(Docket No. 36) at 3,[2] the defendant served on the plaintiff a timely expert witness designation which included the following with respect to Croteau:

> 2.   Jeffrey Croteau
>      Exponent
>      21 Strathmore Road
>      Natick, Massachusetts  01760
>
> Mr. Croteau is expected to testify about his education, knowledge, training and experience as described in his curriculum vitae which is attached to this disclosure.
>
> Mr. Croteau is expected to testify about the conditions which existed at the Prime Tanning facility where the accident occurred; the dimensions of the aisle, racks and rack beams; the dimensions of the 30RCTT-5 lift truck Mr. Brown was operating at the time of the accident; the investigation of the accident conducted by Prime Tanning, OSHA and the local police; the physical evidence he found during his site and lift truck inspection; inspections of the lift truck after the accident; the path of travel and movement of the lift truck at the time of the accident; as well as other discovery materials in this case.
>
> Mr. Croteau is expected to offer opinion testimony that the accident was caused by operator error and not any defect or mechanical problem or malfunction of the lift truck.

Crown Equipment Corporation's Expert Disclosures (Attachment B to Motion) at 3.

The plaintiff contends that this disclosure "failed to provide Plaintiff with any of the factual bases for [Croteau's] opinion that Tom Brown's accident resulted from operator error" and

> contained no detail as to the "conditions" which Mr. Croteau deemed to exist at Prime Tanning when Tom Brown died, the "dimensions of the aisle, racks and rack beams" at Tom's work site as determined by Mr. Croteau, the "dimensions of the 30RCTT-5 lift truck Mr. Brown was operating at the time of the accident" according to Mr. Croteau, or any detail as to Mr. Croteau's findings regarding the "investigation of the accident" by others and/or the physical evidence he found.

Motion at 3-4.  The plaintiff goes on to assert that "[o]n April 25, 2006, Plaintiff's counsel sent a letter to Defendant's counsel expressing the inadequacy of Mr. Croteau's disclosure and requesting the

---

[2] The disclosure itself is undated.

factual predicate for Mr. Croteau's opinion that Tom Brown committed operator error." *Id*. at 4. In an affidavit submitted with a reply memorandum in support of the motion, counsel for the plaintiff states that he "asked for appropriate supplementation of Mr. Croteau's designation on April 25, 2006." Affidavit of Terrence D. Garmey in Support of Plaintiff's Motion to Strike, etc. ("Garmey Aff.") (Docket No. 39) ¶ 5. The defendant has provided a copy of at least part of this letter. Attachment D to Opposition. The letter asks that the defendant "elaborate on [Croteau's] general opinion" to the effect that the accident was caused by operator error "as soon as possible." *Id*.

An e-mail dated April 28, 2006 from counsel for the plaintiff to counsel for the defendant includes the assertion that counsel for the defendant had informed counsel for the plaintiff "a few days ago" that "if the third corner post is off the table on our end, Crown will not be producing Jeffrey Croteau as an expert witness." Attachment C to Opposition. The e-mail asked counsel for the defendant to "please confirm that this is the case." *Id*.

At an undisclosed time, the plaintiff served the defendant with interrogatories, including the following request:

> If you contend that Crown's fourth corner seat back extension would not have prevented Thomas Brown's death, considering all circumstances known, believed, or claimed by Crown concerning Mr. Brown's accident on August 1, 2003, state every fact, and identify every reason, for and/or supporting this contention.

Crown Equipment Corporation's Answers to the Plaintiff's Interrogatories (Attachment D to Motion) at 3 ("INTERROGATORY NO.2"). The response to this request provided by the defendant states as follows:

> Crown is unaware of any device known as a "fourth corner seat back extension." The product at issue is a 1989 Crown 30RCTT stand-up rider. The operator stands in the compartment and the product is not equipped with a seat. Consequently, no "seat back extension" is possible with this piece of equipment. Because such a device does not exist, Crown cannot comment on

3

>how the unknown device may have affected the consequence of Mr. Brown's industrial accident.
>
>Crown further states that devices intended to mitigate the consequences of some horizontal intrusion accidents do not prevent the collision between the stand-up rider lift truck and the fixed object. Consequently, forces that are generated as a result of a collision are not eliminated by the use of devices intended to mitigate some horizontal intrusion accidents. Because of the existence of collision forces that are not eliminated by devices intended to mitigate some horizontal intrusion accidents, operators of stand-up rider lift trucks may be injured or killed as the result of collisions and accidents involving stand-up rider lift trucks equipped with devices intended to mitigate the consequences of horizontal intrusion accidents.
>
>Crown objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney client privilege, the work product doctrine, and Fed. R. Civ. P. 26(b)(3) and (4).

*Id*. at 3-4.

The defendant took the deposition of an expert witness designated by the plaintiff, Richard M. Ziernicki, Ph.D., on May 16, 2006. Opposition at 2.[3] The defendant provided a four-page supplemental disclosure with respect to Croteau on May 30, 2006. Opposition at 4; Crown Equipment Corporation's Supplemental Expert Disclosure (Attachment C to Motion). The plaintiff asserts that this document "contained at long last the factual predicate for Mr. Croteau's opinion on operator error" and that it also contained "a fundamental, new expert opinion that attempts to undermine Plaintiff's long-standing allegation and trial theory that Defendant's 4th corner guard would have saved her husband's life." Motion at 5-6. She contends that she "made clear from the day this case was filed her claim that the 4th corner guard would have prevented Tom's death" and that, had she been informed that the defendant's expert witness would disagree with this theory, she would have "undertaken a materially different course of discovery, . . . focusing her experts on evaluating and discounting this specific claim." *Id*. at 6-7. She argues that the defendant was required to present the

---

[3] The deposition had originally been noticed for February 22, 2006. Opposition at 2. The plaintiff does not dispute the defendant's (*continued on next page*)

4

detail about Croteau's opinion in this regard in its answer to her interrogatory number 2 and that the facts and evidence on which this portion of Croteau's opinion is based were known to him "well in advance of his February 14, 2006 required disclosure." *Id*. at 7-8 (emphasis omitted).

I will address first the plaintiff's contention that she "was clearly entitled to Mr. Croteau's underlying facts for his opinion two and a half months earlier [than May 30, 2006], and certainly before Defendant took Dr. Ziernicki's deposition" and that all of Croteau's testimony must be barred as a result of the delay in providing this information. *Id*. at 6, 11-12. The plaintiff cites no authority in support of her argument to the effect that a plaintiff is entitled to every detail of the expected opinion testimony of a defense expert witness before the deposition of her own expert witness may be taken by the defendant and I am aware of none. Indeed, Fed. R. Civ. P. 26(e)(1) requires a party to supplement its expert witness disclosures under certain circumstances. That rule is inconsistent with the position taken by the plaintiff. More important is the fact that the plaintiff did not avail herself of the means available to obtain the court's assistance in obtaining the information to which she contends she was entitled at a particular time. Counsel for the plaintiff is familiar with this court's approach to discovery disputes and the fact that resolution of such disputes by the court is available on, at most, a few days' notice. The plaintiff's failure to avail herself of this solution before filing on June 26, 2006 — less than two months before trial — a motion to strike all of the testimony of one of the defendant's expert witnesses bars her from receiving the drastic relief she now seeks.[4] *See generally Wheeler v. Olympia Sports Ctr., Inc.*, 2004 WL 2287759 (D. Me. Oct. 12, 2004), at *2. The plaintiff's apparent refusal of the defendant's offer to arrange for her to take Croteau's deposition before trial, Opposition

---

assertion that the deposition did not take place until May 16, 2006 "[d]ue to various scheduling conflicts." *Id*.

[4] Contrary to the plaintiff's argument, Motion at 11-12, any failure by the defendant to disclose Croteau's anticipated testimony in sufficient detail in a timely fashion does not constitute a failure to comply with "an order to provide . . . discovery" justifying sanctions under Fed. R. Civ. P. 37(b)(2). A routine scheduling order, entered at the beginning of litigation, is not an "order to provide discovery" within the meaning of Rule 37. That rule applies when an order has been issued after an alleged discovery violation has (*continued on next page*)

5

at 6, also weighs against her assertion that the defendant is using the plaintiff's April 26 request for more information "as a Trojan horse to ambush Plaintiff with a fundamental new expert opinion on the eve of trial." Motion at 1.[5]

At the final pretrial conference, counsel for the defendant admitted that the supplemental disclosure of Croteau's expert opinions, which was over four times as long as the initial disclosure, does essentially present a new theory of defense and did change the defendant's answer to the plaintiff's interrogatory number two. The defendant was thus obligated to amend its response to the plaintiff's interrogatory number two, but it did not do so. While a defendant is allowed to supplement his expert's disclosure after taking the deposition of a plaintiff's expert witness to respond to points not specifically made in the plaintiff's expert disclosure, that defendant is not allowed to supplement its disclosure by revealing a new theory of defense against the plaintiff's substantive claims. There is no evidence of deliberate concealment of Croteau's new opinions in this case; indeed, counsel agreed at the final pretrial conference that the "new" issue only arose well into discovery when someone thought to ask whether the shelving system with which the lift truck came into contact in the accident was bolted to the floor or freestanding. However, after considering the oral argument, I am convinced that the plaintiff was "blindsided" by the untimely supplemental disclosure. *See generally Garrett v. Tandy Corp.*, 215 F.R.D. 15, 20-21 (D.Me. 2003). "Common sense suggests that when a party makes a last-minute change that adds a new theory . . . the opposing side is likely to suffer undue prejudice."

---

been brought to the attention of the court and is in turn violated. As noted, the plaintiff never sought such an order with respect to Croteau's testimony.

[5] During the final pretrial conference counsel presented oral argument on this motion. Counsel for the plaintiff explained his failure to seek the intervention of the court after he first asked counsel for the defendant for additional information about the defendant's initial disclosure with respect to Croteau by stating that counsel for the defendant told him at that time that if the plaintiff would not dispute the facts set forth in Thomas Brown's employer's accident report, the defendant probably would not call Croteau as an expert witness. The plaintiff does not dispute the defendant's representation that "[s]hortly thereafter, counsel for Crown informed plaintiff's counsel that it had determined it would need to call Mr. Croteau to testify about accident reconstruction issues, even if the plaintiff did not pursue the third post defect claim." Opposition at 3-4. By this time, at the latest, the plaintiff was under an obligation to bring her request for additional information about the existing disclosure to the attention of the court.

*Boucher v. Northeastern Log Homes, Inc.*, 2005 WL 758470 (D.Me. 2005), at *4 (quoting *Macaulay v. Anas*, 321 F.3d 45, 50 (1st Cir. 2003)). Considerations of fairness and preservation of the integrity of the court's scheduling order therefore lead me to conclude that any expert opinion testimony by Croteau not fairly encompassed within the defendant's initial expert witness disclosure may not be presented at trial. In other words, the plaintiff's alternate request that the supplemental disclosure be excluded is granted.

This ruling makes it unnecessary to consider the plaintiff's contention that Croteau's opinion as expressed in the supplemental disclosure "is still insufficient" with respect to the factual support provided for that opinion. Motion at 1 n.1.

The plaintiff's motion to exclude all or part of the expert testimony of the defendant's expert, Richard Croteau, is **GRANTED** as to expert opinions not reasonably included in the defendant's first disclosure of Croteau's anticipated expert testimony and otherwise **DENIED**.

Dated this 13th day of July, 2006.

                                          /s/ David M. Cohen
                                          David M. Cohen
                                          United States Magistrate Judge