*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *CLAIRE BROWN,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *Docket No. 05-158-P-DMC* |
| | ) | |
| *CROWN EQUIPMENT CORPORATION,* | ) | |
| | ) | |
| *Defendant* | ) | |

*MEMORANDUM DECISION ON MOTIONS* IN LIMINE[1]

The parties have filed fifteen motions *in limine* in this action arising out of a workplace accident involving a lift truck manufactured by the defendant.  I will first address the four motions filed by the defendant.

## I.  Defendant's Motions

### A.  Post-Sale Actions by Defendant

The defendant moves "to prohibit the introduction of evidence about design features of lift trucks, product up-grades and product informational bulletins developed after the initial sale of the subject lift truck but before the plaintiff's accident."  Crown Equipment Corporation's Motion *In Limine* to Prohibit the Introduction of Evidence About Design Features, etc. (Docket No. 43) at 1. This motion incorporates a memorandum of law filed by the defendant with its final pretrial memorandum.  Crown Equipment Corporation's Memorandum of Law Regarding Post-Sale Duties ("Post Sale Memorandum") (Docket No. 33).  In that memorandum, the defendant argues that Maine

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Jude David M. Cohen conduct all
(*continued on next page*)

law does not impose a duty on a manufacturer to retrofit its products and that Maine law would not recognize a post-sale duty to warn or to provide information about an available product upgrade under the circumstances of this case. *Id*. at 7-14. The plaintiff responds that she "does not contend that Crown has a post-sale duty to retrofit in this case" and that the defendant's argument on that issue is accordingly moot. Plaintiff's Responsive Memorandum Regarding the Post-Sale Duty to Warn ("Post Sale Opposition") (Docket No. 58) at 1.[2] The defendant is apparently unwilling to accept this representation by the plaintiff, Crown Equipment Corporation's Reply to the Plaintiff's Response to Crown's Motion *In Limine* to Prohibit the Introduction of Evidence About Design Features of Lift Trucks, etc. (Docket No. 91) at 1, but it offers no reason why this court should nonetheless address the issue. I consider the plaintiff to be bound by its representation and will not consider further any possible duty to retrofit.

With respect to the duty to warn, the defendant acknowledges that I held in *Davies v. Datapoint Corp*., 1996 WL 521394 (D. Me. Jan. 19, 1996), that Maine law recognizes a negligence-based post-sale duty to warn in products-liability cases. Post Sale Memorandum at 11-12. The defendant contends that this holding is inconsistent with the allegedly "more restrictive" subsequent Restatement (Third) of Torts: Product Liability, which would likely be adopted by the Maine Law Court.[3] *Id*. at 12. The text of the section of the Third Restatement on which the defendant relies provides:

---

proceedings in this case, including trial, and to order the entry of judgment.
[2] As a result of the unusual way in which the defendant chose to bring this issue to the court's attention the plaintiff has filed a separate document entitled "Plaintiff's Response to Crown Equipment Corporation's Motion In Limine to Prohibit the Introduction of Evidence About Design Features of Lift Trucks, Product-up [sic] Grades and Product Informational Bulletins Developed After the Initial Sale of the Subject Lift Truck." Docket No. 59. This document adds little to the plaintiff's arguments on this issue.
[3] The defendant also asserts that my decision in *Davies* is inconsistent with the Maine Law Court's decision in *Bernier v. Raymark Indus., Inc.,* 516 A.2d 534 (Me. 1986), and that, given *Bernier*, the Law Court would not recognize any post-sale duty to warn in product-liability cases. Post Sale Memorandum at 11-12. I was well aware of the *Bernier* decision when I decided this issue in the *Davies* case, 1996 WL 521394 at *1 n.2, and upon reconsideration continue to conclude that it is not inconsistent with the existence of a post-sale duty to warn based on negligence principles, *see Bernier*, 526 A.2d at 538-40.

(a)   One engaged in the business of selling or otherwise distributing products is subject to liability for harm to persons or property caused by the seller's failure to provide a warning after the time of sale or distribution of a product if a reasonable person in the seller's position would provide such a warning.

(b)  A reasonable person in the seller's position would provide a warning after the time of sale if:
(1) the seller knows or reasonably should know that the product poses a substantial risk of harm to persons or property; and
(2) those to whom a warning might be provided can be identified and can reasonably be assumed to be unaware of the risk of harm; and
(3) a warning can be effectively communicated to and acted on by those to whom a warning might be provided; and
(4) the risk of harm is sufficiently great to justify the burden of providing a warning.

Restatement (Third) of Torts: Prod. Liab. § 10 (1998).  Again, I do not see, and the defendant does not identify, any aspect of my decision in *Davies* that is necessarily inconsistent with this definition of the post-sale duty to warn.

The defendant is more specific in its argument that the plaintiff cannot meet the standard set forth in section 10 of the Third Restatement in this case because "she cannot demonstrate that the product posed a substantial risk of harm of which the user is reasonably assumed to be unaware, that those to whom a warning might be provided . . . could reasonably be identified, or that the risk of harm was sufficiently great to justify the burden of providing a warning," Post-Sale Memorandum at 12-13, addressing subsections (b)(2)-(4) of the definition.  The defendant asserts that the fact that the power unit of the lift truck was lower than the height of the rack shelf which provided the mechanism of the accident at issue "was obvious to those workers who operated the truck on a daily basis," including the plaintiff's decedent.  *Id*. at 13.  It thus concludes that there could be no duty for it to warn "that the lift truck could fit under the rack beam."  *Id*.  The plaintiff responds that "such awareness does not equate with awareness of the substantial risk of injury or death arising from a horizontal intrusion incident from driving this machine in this area, or the risk that the machine could go underneath the

first horizontal rack, at 1 to 3 mph of speed and before [the driver] could react, and cause him to be crushed." Post Sale Opposition at 9.[4]  As is often the case, a party's definition of "the risk of harm" determines its view of the applicability of that term to the action at hand.  I find the plaintiff's recitation of evidence on this point, *id*. at 9-10, to provide a sufficient factual basis to dispute the evidence cited by the defendant, Post Sale Memorandum at 13, and accordingly conclude that the plaintiff is entitled to proceed with respect to this aspect of the duty-to-warn claim.

The defendant's next specific contention is that "[t]he burden of identifying and notifying every user of a pre-1996 Crown model RC stand-up rider lift truck of the availability of the fourth corner extension kit is sufficiently great to mitigate against the imposition of a post-sale duty on Crown's part under the circumstances of this case."  *Id*. at 14.  Here, the plaintiff sets forth evidence that the defendant distributed a "product reference" concerning the risks of horizontal intrusion to its known customers who owned 1989 Crown 30RCTT stand-up riders in 1999 and that its representative visited the decedent's employer in 1999 to answer questions relating to one such lift.  Post Sale Opposition at 6-7.  This evidence, if believed, sufficiently addresses subsections (b)(2) and (b)(3) of section 10. The defendant does not address the question whether the risk of harm posed by the lift was "substantial" within the meaning of section 10.

On the showing made, the defendant's motion is **DENIED**.

### B.  Evidence of Other Accidents or Claims

The defendant moves to exclude from evidence and preclude "reference to what are claimed to be other similar accidents, incidents, injuries, or lawsuits involving Crown stand-up rider lift trucks." Crown Equipment Corporation's Motion *In Limine* to Exclude Evidence of Other Accidents,

---

[4] The plaintiff erroneously asserts that § 10(b)(2) of the Restatement requires proof that the decedent himself had such knowledge and that all users actually had such knowledge in order to render section 10 applicable.  Post Sale Opposition at 9-10.  In fact, section 10 speaks, in more general terms, of those who can reasonably be assumed to be unaware of the risk of harm.  *See* Restatement (Third) (*continued on next page*)

Incidents, Claims or Lawsuits ("Other Incidents Motion") (Docket No. 44) at 1.  It contends that the only evidence of such events is hearsay; any relevance of such evidence is substantially outweighed by the danger of unfair prejudice, confusion and delay; any other incidents are not substantially similar to that involved in this case; and notice is not at issue.  *Id*.  The defendant focuses on accident reports "for incidents involving stand-up rider lift trucks that occurred between October 1978 and February 2006,[5] lawsuits filed against Crown, and summaries of the accidents," which are listed in the plaintiff's final pre-trial memorandum.  *Id*. at 2.  It also asserts that Dr. Richard Ziernicki, an expert witness for the plaintiff, "may attempt to testify regarding his work as an expert witness for the plaintiff" in a case in a state court in Missouri, and that the plaintiff "may also attempt to introduce this evidence in any number of other ways."  *Id*.

The first argument offered by the defendant is that the accident reports listed in the plaintiff's final pre-trial memorandum "constitute hearsay not within any exception."  *Id*.  It goes on to assert that the reports cannot serve as evidence of notice, "since . . . notice is not a controverted issue" and "Crown has never denied that it received reports of accidents involving its stand-up rider lift trucks."  *Id*. at 3.  The plaintiff responds that the reports of "logically relevant similar incidents" are admissible because those incidents are "substantially similar" to the accident involved in this case, in that the "Crown forklift failed to protect its operator . . . from an intrusion above 51¼ inches."  Other Incidents Opposition at 1.  She goes on to assert that the reports are admissible under the business records exception to the hearsay rule and that they "constitute an adoptive admission by Crown."  *Id*.  She does not address the defendant's contention that, because it does not dispute that it "had

---

of Torts: Prod. Liab. § 10, cmt. f.
[5] The plaintiff states that she "is attempting to introduce evidence only up to and including the death of her husband."  Plaintiff's Response to Crown Equipment Corporation's Motion In Limine to Exclude Evidence of Other Accidents, etc. ("Other Incidents Opposition") (Docket No. 72) at 5.

knowledge of reports of accidents involving horizontal intrusions prior to August 2003," the accident reports at issue are not admissible on the issue of notice.  Other Incidents Motion at 9.

The defendant cites *Rye v. Black & Decker Mfg. Co.*, 889 F.2d 100 (6th Cir. 1989), in support of its position.  Other Incidents Motion at 9.   In that case, the trial court had excluded most, but not all, of the seventeen complaints, court opinions and letters from customers proffered by the plaintiff to show that the defendant had notice of the problem with its product that caused the plaintiff's injury. 889 F.2d at 101.  Noting that prior accidents must have occurred under similar circumstances or share the same cause in order to be admissible as "substantially similar" to the accident giving rise to the current trial, the appeals court upheld the trial court's ruling, finding that the plaintiff was not harmed by the exclusions because the defendant did not deny that it was aware of the defects alleged by the plaintiff to have caused his injuries.  *Id*. at 102-04.  I agree that the defendant's proffered admission that it "had knowledge of reports of accidents involving horizontal intrusions prior to August 2003," Other Incidents Motion at 9, provides an answer to the general question whether the defendant had notice of such events.  However, that is not the end of the matter.

The plaintiff has a claim for punitive damages.  As she suggests, the accident reports are evidence of "Crown's notice of the seriousness of the problem on its machines and its slow and incomplete response to the problem."  Other Incident Opposition at 11.  She also asserts that the reports are necessary evidence with respect to her negligence claim, so that she can establish "the period over which Crown received its notice, the method by which it received its notice, the frequency of prior incidents, and the details contained within the various reports, especially the severe injuries and deaths."  *Id*. at 10.  These uses still require that the reports fall within a recognized exception to the hearsay rule.

The reports provided by the plaintiff in connection with this motion were submitted in a large black binder identified as Exhibit 1. It is clear from a cursory review of these documents that they meet the definition of hearsay: an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801. The plaintiff contends that they constitute adoptive admissions under Fed. R. Evid. 801(d)(2)(B), which provides that a statement is not hearsay if it "is offered against a party" and is a statement "upon [sic] which the party has manifested an adoption or belief in its truth." Other Incidents Opposition at 6. The plaintiff argues that the defendant has "adopted" the accident reports by reviewing them and categorizing each "using its own classification criteria," thus "admitting" that an accident categorized as "R" "involved a horizontal intrusion similar to Tom Brown's;" by using information from these reports to compile "pivot tables" and other statistical reports, which "necessarily adopt[] the truthfulness of the representations within the reports;" and by the use by Dan Dunlap of the statistical data in his testimony, *id*. at 7-8.[6] None of these reasons is persuasive; none of the three, alone or taken together, necessarily establishes that the defendant has manifested an adoption of the contents of the reports, let alone a belief in their truth. They cannot be admitted into evidence as adoptive admissions.

The plaintiff's argument that the reports are business records is rather brief. She asserts that they are business records because the defendant's "injury and loss prevention policy" requires its products safety coordinator to "review personal injury accidents" and sets forth instructions for the reporting and handling of accidents and injuries occurring "on" its products. Other Incidents Opposition at 2-3.[7] She also states that "[w]ith rare exception, each of the individualized accident reports are contained within Crown stationery and each is categorized by type of accident." *Id*. at 3.

---

[6] Dunlap is listed by the defendant as an expert witness whom it intends to present at trial. Crown Equipment Corporation's Witness List (Docket No. 92) at 9.

[7] This information distinguishes the accident reports at issue here from those involved in *Palmer v. Hoffman*, 318 U.S. 109 (1943), (*continued on next page*)

My own review of the first 25 of the reports in the black binder reveals that eight of them are not made on "Crown stationery."  Neither the form used nor the "categorization" of each report makes it more likely that the reports are business records excepted from the hearsay rule.  A business record is defined in the rules as follows:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification . . . .

Fed. R. Evid. 803(6).  Here, the plaintiff has not offered evidence that each of these reports was made "at or near the time by, or from information transmitted by, a person with knowledge."  While the reports may well be relevant to the issues of negligence and punitive damages, this showing must be made before they may be admitted.

The plaintiff also contends that the reports are admissible under the "residual exception" to the hearsay rule set out in Fed. R. Evid. 807.   Other Incidents Opposition at 8.  That rule provides:

> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.  However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the  particulars of it, including the name and address of the declarant.

---

cited by the defendant.  Other Incidents Motion at 3.

Fed. R. Evid. 807.  Without citation to authority, the plaintiff asserts that "there exists no other practical way that Claire Brown could put before this jury important evidence contained in the exhibits she proffers.  The accident reports were not filled out by the individuals injured, but rather by their employer who had neither monetary nor other incentive to misrepresent the facts and circumstances of the incident."  Other Incidents Opposition at 8.

"[H]earsay testimony should only be admitted under Rule 807 in exceptional circumstances." *United States v. W.B.*, 452 F.3d 1002, 1006 (8th Cir. 2006).  Rule 807 is to be used "only rarely, in truly exceptional cases."  *United States v. Walker*, 410 F.3d 754, 757 (5th Cir. 2005) (citation and internal punctuation omitted); *see also United States v. Lawrence*, 349 F.3d 109, 117 (3d Cir. 2003). Here, where the plaintiff has invoked a subsection of Rule 803 but has not presented sufficient evidence to allow the court to determine whether it applies to each of the proffered reports, the court cannot proceed to consider Rule 807 until a decision has been made that the reports are "not specifically covered by Rule 803," as Rule 807 requires.  I doubt in any event that the circumstances of this case present "exceptional circumstances" that would justify application of Rule 807, but at this time I need not reach that issue.

Finally, the defendant contends that admission of the accident reports "poses a danger of unfairness, confusion, and undue expenditure of time in the trial of collateral issues."  Other Incidents Motion at 4.  It asserts that this evidence "will confuse and mislead the jury . . . by requiring presentation of substantial evidence on matters that are not relevant to the issues to be decided in this case."  *Id*. at 5.  Federal Rule of Evidence 403, on which the defendant relies in this portion of its motion, *id*. at 4-5, is only applicable by its terms to relevant evidence.  The question whether Rule 403 applies is reached only after a determination of relevance is made.

I have already determined that the accident reports in general appear to be relevant to the plaintiff's negligence and punitive damages claims. The issue is not ripe for application of Rule 403, however, because the relevance of each proffered report has not in fact been established. It may well be necessary ultimately for the parties to address individually each report for which they continue to contest relevance and/or substantial similarity, if that can be done without unnecessary delay. In the absence of a stipulation as to foundation and/or admissibility generally, the plaintiff will have to satisfy at trial the requirements of the specific exception to the hearsay rule on which she relies as to each potential exhibit in this category. That has not been done in the materials submitted with the motion *in limine*.

With respect to the expert testimony of Dr. Ziernicki, an issue not addressed in the plaintiff's opposition to this motion, he will not be allowed to testify about his work as an expert witness in any other case against the defendant.

The defendant does not address any other specific "accidents, incidents, claims or lawsuits," the terms used in the title of its motion. I will not rule on the admissibility of hypothetical evidence.

The defendant's motion is **DENIED** on the showing made, except as to the testimony of Dr. Ziernicki, but the plaintiff is hereby advised that the denial does not constitute a ruling on the admissibility of the accident reports.

### C.  Internal Crown Documents

The defendant moves to exclude all testimony by the plaintiff's witnesses "that purports to interpret the meaning of internal Crown documents, in particular Crown's Injury and Loss Prevention Policy." Crown Equipment Corporation's Motion *In Limine* to Exclude Testimony from the Plaintiff's Witnesses Regarding the Meaning of Internal Crown Documents ("Document Interpretation Motion") (Docket No. 45) at 1. The only "internal Crown Document" specifically discussed in the motion is the

Injury and Loss Prevention Policy.  I decline to rule on testimony concerning any other "internal Crown document" until that document has been presented to me.

The defendant asserts that the plaintiff's experts, Richard Ziernicki and Robert Glynn, will present opinion testimony (i) that purports to interpret the meaning of its Injury and Loss Prevention Policy (the "Policy"), (ii) to the effect that the defendant "failed to comply with its own internal policy" and (iii) that this failure is evidence that the defendant was negligent "or otherwise liable in this case." *Id*. at 2.  The defendant contends that only its own employees are competent or qualified to explain the meaning ascribed to the Policy by the defendant, that any such testimony would "encroach upon the jury's fact-finding function," that any such testimony would be unreliable, and that any such testimony would violate Fed. R. Evid. 403.  *Id*. at 3-8.  The plaintiff responds that it is appropriate for expert witnesses to testify that the defendant did not reasonably conform to its own written policy, that Ziernicki and Glynn are qualified to do so, that such testimony would be reliable and that its admission would not violate Rule 403.  Plaintiff's Objection to Defendant's Motion *In Limine* to Exclude Testimony from the Plaintiff's Witnesses Regarding the Meaning of Internal Crown Documents ("Document Interpretation Opposition") (Docket No. 61) at 2-7.

The plaintiff properly notes that she will not attempt to offer through her expert witnesses evidence about the subjective intent or state of mind of the defendant or its employees.  *Id*. at 7.  If, as the defendant contends, the Policy "does not contain technical or specialized language such that the jury would require the assistance of expert testimony to understand and evaluate its terms," Document Interpretation Motion at 3,  it is clear that no such testimony from any witness would be likely to be admissible.  However, on the question whether the defendant's actions or lack of action under certain circumstances complied with the terms of the Policy, the point on which the plaintiff does intend to offer the testimony of its expert witnesses, Document Interpretation Opposition at 4-6, the defendant's

argument goes too far.  Such testimony is not properly characterized as interpretation of the meaning of the document — after all, the defendant's position is that the meaning is clear on the face of the document — but rather is an appropriate subject for expert opinion testimony.

The defendant's response to the plaintiff's opposition to its motion raises a new issue for the first time, contending that the Policy does not create a duty running to the plaintiff or any third party.  Crown Equipment Corporation's Reply to the Plaintiff's Response to Crown's Motion *In Limine* to Exclude Testimony from the Plaintiff's Witnesses, etc. (Docket No. 90) at 1-2.  Apparently, the defendant offers this argument as a reason to exclude the Policy entirely from the evidence to be presented at trial.  This issue is not yet properly before the court.  I will not address issues raised for the first time in reply memoranda.  *See In re One Bancorp. Litig.*, 134 F.R.D. 4, 10 n.5 (D. Me. 1991).

The plaintiff asserts that Ziernicki and Flynn "are appropriately qualified experts to testify about whether or not Crown reasonably met the[] obligations set out in this Injury and Loss Prevention Policy," Document Interpretation Opposition at 5, but offers only conclusory statements as to why this determination, which after all must be made by the court, is compelled, *id*. at 3-4.  I will reserve ruling on the issues that are properly presented by this motion until such time as the witnesses actually testify and are asked questions to which the defendant objects.[8]

### D.  ANSI Standard and OSHA Regulation

The defendant has submitted a document styled a "memorandum of law" along with its motions *in limine* which contends that American National Standards Institute ("ANSI") Standard B56.1 and a certain Occupational Safety and Health Administration ("OSHA") regulation are admissible as evidence at trial.  Crown Equipment Corporation's Memorandum of Law in Support of the Admissibility of ANSI Standard B56.1 and OSHA Regulations 1910.178(l) ("ANSI/OSHA Motion")

---

[8] I note that the defendant apparently intends to object to the admission of the Policy itself.  Document Interpretation Motion at 1.  A (*continued on next page*)

(Docket No. 57) at 1.  Neither the report of final pre-trial conference and order in this case (Docket No. 41) nor the local rules of this court provide for the filing of such a document.  I will treat it as a motion *in limine* seeking a ruling that the standard and the regulations are admissible.

The defendant asserts that the ANSI standard applicable to the lift truck involved in this case at the time of its manufacture and sale was ASME/ANSI B56.1-1988.  *Id*. at 1.  The plaintiff agrees that this standard "constitutes relevant evidence on her claims" but avers that it is not by itself dispositive of her claims.  Plaintiff's Responsive Memorandum Regarding Admissibility of ANSI Standard B56.1 and OSHA Regulation 1910.178(l) ("ANSI/OSHA Opposition") (Docket No. 60) at 1.  Since the defendant states in its initial submission that such standards "may be used as pieces of evidence upon which the jury may decide whether a party acted reasonably in the circumstances," ANSI/OSHA Motion at 2, I do not see any dispute concerning the latter assertion.  The plaintiff also contends that the court should admit the 1993 ANSI Standard B56.1 because it is "relevant to Plaintiff's post-sale negligence claims."  ANSI/OSHA Opposition at 1.  The defendant opposes this request, Crown Equipment Corporation's Reply to the Plaintiff's Responsive Memorandum Regarding the Admissibility of ANSI Standard B56.1 and OSHA Regulation 1910.178(l) (Docket No. 94) at 1.  The issue has not been well developed in either party's submission and should not have been raised for the first time in an opposition to a motion *in limine*.  I will expect counsel to be prepared to present this issue fully sufficiently in advance of the time a ruling is required so as not to delay trial or waste the jury's time.  By agreement of the parties, the 1988 ANSI standard will be admitted.

The OSHA regulation to which the defendant refers is found at 29 C.F.R. §§ 1910.178(l).  ANSI/OSHA Motion at 3-4.  According to the defendant, the regulation "set[s] forth mandatory training requirements for operators who use powered industrial trucks in the workplace."  *Id*. at 3.  It

---

ruling excluding that document from evidence would render moot the issues posed by the instant motion.

goes on to assert that "[e]vidence of . . . whether or not Mr. Brown participated in OSHA-mandated training is relevant to the issue of whether Mr. Brown's accident was caused by operator error," and the defendant has asserted a defense of comparative fault. *Id*. at 3. It cites authority for the proposition that "[v]iolation of a safety statute or OSHA regulation is admissible as evidence of negligence." *Id*. at 4. Of course, the regulation applies to employers of operators of powered industrial trucks, not to the operators themselves, so violation of the regulation by Prime Tanning, Mr. Brown's employer, could not be evidence of Mr. Brown's negligence, which is the matter in issue. Whether Mr. Brown was trained to use the lift truck at issue here would appear to be relevant; whether he received the training mandated by OSHA appears to be much less relevant.

The plaintiff objects to the admission of the OSHA regulation on this basis. She suggests that the defendant's request is based on an intent to "point[] a finger at Prime Tanning for the jury to consider." ANSI/OSHA Opposition at 2-3. Allowing this regulation to be placed before the jury, she contends, would undermine "[t]he basic integrity of the workers' compensation scheme" established by Maine statute by "back door[ing] a causation argument against Prime Tanning." *Id*. at 3. The defendant responds that it "is permitted to present evidence of other causes of Mr. Brown's accident" and that it "has no intention of arguing that Prime Tanning committed an OSHA violation in this case." Crown Equipment Corporation's Reply to the Plaintiff's Responsive Memorandum Regarding the Admissibility of ANSI Standard B56.1 and OSHA Regulation 1910.178(l) at [2]. It asserts again that the regulation is admissible as evidence "that will support the argument that Mr. Brown's negligence, whether alone or in combination with that of Prime Tanning, was the sole proximate cause of Mr. Brown's accident." *Id*. Frankly, I do not see how the regulation itself is evidence of either Mr. Brown's negligence or that of his employer, in the absence of evidence that the employer's violation

14

of that regulation reasonably could be construed to have caused the accident at issue.  On the showing made, the OSHA regulation is not admissible.

## II.  Plaintiff's Motions

### A.  Collateral Payments

The plaintiff seeks exclusion of "reference, inquiry or evidence" about her husband's workers' compensation file and benefits; her receipt of or entitlement to workers' compensation benefits, life insurance benefits, annuity or other benefits from any source other than the defendant; her past or future receipt of or entitlement to pension, retirement or similar types of benefits; payments by Prime Tanning or its benefits administrator to her or to others on her behalf; or any other benefits, monies, payments or promises or potential for same made or provided to her on account of the death of her husband. Plaintiff's Motion In Limine to Exclude Reference, Inquiry or Evidence as to Collateral Benefits or Payments She Has Received (or Will Receive) on Account of Thomas Brown's Accident and Death (Docket No. 46) at 1-2.  She invokes the collateral source rule, citing *Hoitt v. Hall*, 661 A.2d 669, 673-74 (Me. 1995), and *Werner v. Lane*, 393 A.2d 1329, 1336 (Me. 1978).  *Id*. at 2.

The defendant responds that the "broad ruling" sought by the plaintiff is inappropriate at this time because the admissibility of such evidence "will turn upon the evidence and testimony presented at trial."  Crown Equipment Corporation's Opposition to the Plaintiff's Motion *In Limine* to Exclude Reference, Inquiry, or Evidence as to Collateral Benefits, etc. (Docket No. 65) at 1.  It contends that the collateral source rule does not prohibit the introduction of evidence of a plaintiff's collateral source income in all circumstances and asserts that "information related to the income the plaintiff has received or will receive from collateral sources may become relevant to impeach a witness or to expose a witness's potential for bias."  *Id*. at 2.

15

My ruling is as follows:  reference, inquiry or evidence as to any collateral benefit or payment made or available to the plaintiff in connection with the death of her husband may only be made after counsel has approached sidebar and presented in detail the reference, inquiry or evidence counsel desires to make or submit and the reasons why the specific reference, inquiry or evidence would not violate the collateral source rule.

## B.  Expressions of Remorse, Regret or Sympathy

The plaintiff asks the court to preclude the defendant and its counsel "from making any expressions or statements of remorse, regret or sympathy as to Thomas Brown's accident, death, or the tragedy that has befallen his family as a result thereof at the trial of this matter."  Plaintiff's Motion In Limine to Prohibit Expressions of Remorse, Regret, or Sympathy by Defendant Crown Equipment Corporation or its Counsel (Docket No. 47) at 1.  She asserts that "[u]nless there is an apology by Crown joined with or accepted as an admission of responsibility . . ., remarks by Crown or its counsel of remorse, regret, sympathy, etc. have no evidentiary value or relevance to this case."  *Id*.  She contends that the only purpose or effect of such statements is to reduce her recovery.  *Id*. at 1-2.  This, of course, is speculative in the extreme and assumes too much.  A casual or occasional expression of regret at a tragic event or outcome is a basic human response and is not likely to divert a jury from its fact-finding duty based on actual evidence presented during the course of a trial.  That said, the defendant and its counsel are cautioned not to paint the lily.  The motion is denied.

## C.  Plaintiff's Dating and Potential for Same and Remarriage

The plaintiff asks the court to exclude "any reference, inquiry or evidence as to her dating status since the death of her husband, any potential for dating or any potential for remarriage."  Plaintiff's Motion In Limine to Prohibit Reference, Inquiry or Evidence as to Her Dating Status, Potential for Dating or Potential for Remarriage (Docket No. 48) at 1.   The defendant responds by

stating that it "does not intend to offer any evidence of that sort at this time."  Crown Equipment

Corporation's Response to the Plaintiff's Motion *In Limine* to Prohibit Reference, Inquiry, or

Evidence as to Her Dating Status, etc. (Docket No. 62) at 1.  The defendant "reserve[s] the right to

refer to Mrs. Brown's potential for remarriage, potential for dating, or dating status solely for

impeachment purposes if warranted by evidence that is introduced or developed at trial."  *Id*.

The plaintiff finds this response inadequate and accuses the defendant of a "loose,

noncommittal tactic," asserting that there will be no need to impeach her testimony because her

counsel will not ask her or any other witness "whether Mrs. Brown is dating, or intends to date or

remarry."  Plaintiff's Reply Brief in Support of Her Motion In Limine to Prohibit Reference, Inquiry or

Evidence as to Her Dating Status, etc. (Docket No. 81) at 1.  Those are not the only questions that

might provide the basis for questions on cross-examination that might involve the plaintiff's social

life.  While I doubt that any such basis will be provided, I prefer to rule on actual issues rather than

speculative ones.  Should defense counsel feel the need to get into any of these matters at trial, they

will first approach sidebar and explain the questions they wish to ask and the reasons why.

### D.  Bolting Down the Rack

The plaintiff seeks to exclude reference or evidence "as to the significance of bolting down the

rack on the disclosed opinion of Plaintiff's expert, Dr. Richard Ziernicki, that installation of a [fourth]

corner extension on the machine operated by Thomas Brown would have prevented any intrusion of a

rack and, therefore, prevented his death."  Plaintiff's Motion In Limine to Preclude Reference, Inquiry

or Evidence as to the Significance of Bolting Down the Rack, etc. ("Rack Motion") (Docket No. 49) at

1.  She contends that this motion is intended "to prevent Crown from attempting to circumvent the

purpose behind the Court's 7/14/06 order excluding testimony and opinions by Jeffrey J. Croteau as to

. . . the impact that not bolting down the rack system vis-à-vis its alleged impact on the effect of the

[fourth] corner extension if installed on Thomas Brown's machine." *Id.* The plaintiff particularly wishes to prevent the defendant from asking her expert witness questions on cross-examination that are based on the excluded testimony, whether for impeachment or any other reason. *Id*. at 2.

My order dated July 13, 2006, to which the motion apparently refers, merely excluded the proposed opinion testimony of Croteau that was not reasonably included in the defendant's first disclosure of his anticipated testimony on or about February 14, 2006. Memorandum Decision on Motion to Strike Defendant's Expert (Docket No. 42) at 1-2, 7. That ruling says nothing about the cross-examination of the plaintiff's expert witness. The defendant asserts that Dr. Ziernicki acknowledged at his deposition "that the rack system must be affixed to the floor for the guard to be effective and that those were the conditions of the engineering test used to formulate his opinions in this case." Crown Equipment Corporation's Opposition to the Plaintiff's Motion *In Limine* to Preclude Reference, Inquiry or Evidence as to the Significance of Bolting Down the Rack, etc. ("Rack Opposition") (Docket No. 69) at 2. It contends that even if Croteau had never been designated as an expert witness, it would have been allowed to ask Dr. Ziernicki "whether the fact that the relevant rack system was freestanding would alter in any way the opinions that he purportedly holds in this case to a reasonable degree of engineering certainty." *Id.*

The plaintiff replies that the defendant's "representation of Dr. Ziernicki's 'acknowledgments' and 'opinions' are [sic] absolutely false." Plaintiff's Reply Brief in Support of Her Motion In Limine to Preclude Reference, Inquiry or Evidence as to the Significance of Bolting Down the Rack, etc. ("Rack Reply") (Docket No. 87) at 1. She asserts that Dr. Ziernicki's opinion with respect to the forth corner extension "was reached without reference to bolting down of racks." *Id.* She does not respond to the defendant's assertion that it would be allowed to ask Dr. Ziernicki such questions in the absence

18

of any testimony by Croteau.  Neither party cites any authority in supports of her or its position on this issue.

The plaintiff is correct in her observation about the  cited excerpts from Dr. Ziernicki's deposition and the Crown test report attached to the defendant's opposition to her motion: they do not support the assertion that "Dr. Ziernicki is aware and acknowledges that the rack system must be affixed to the floor for the guard to be effective."  Rack Reply at 1.  However, that does not end the matter.  My order granting in part the plaintiff's motion to exclude Croteau's proposed testimony cannot be read to prevent the defendant from asking questions in cross-examination of Dr. Ziernicki about the possible effect on his opinions of the specific fact that the rack involved in this case was not bolted to the floor.  As the defendant points out, it could have asked that question of Dr. Ziernicki, provided that evidence had already been presented to the effect that the rack at issue was not bolted to the floor, even if it had never identified Croteau as an expert witness on any point.  The effect of my order is merely that the defendant cannot present expert testimony from Croteau to the effect that this fact would invalidate or dispute some part or all of Dr. Ziernicki's expert conclusions.

The motion is denied.

### E.  The Death Certificate

The plaintiff moves to exclude from evidence her husband's death certificate.  Plaintiff's Motion In Limine to Exclude Admission of Thomas Brown's Death Certificate, etc. (Docket No. 50) at 1.  Her particular concern is a statement on the certificate that Thomas Brown died within "seconds."  *Id*.  The defendant has not responded to this motion and must therefore be deemed not to object to it.  The motion is granted.

**F. Forklift Training**

The plaintiff next moves to prevent the defendant "from referencing, inquiring, evidencing, or seeking to insert at trial any claim that Prime Tanning provided inadequate forklift training to Thomas Brown or others" and to exclude any evidence "related thereto," including Prime Tanning training materials, OSHA standards set forth in 29 C.F.R. § 1910.178(l) and the defendant's training manual for the forklift at issue. Plaintiff's Motion In Limine to Preclude Reference, Inquiry, or Evidence as to Any Claim of Alleged Inadequate Forklift Training, etc. ("Training Motion") (Docket No. 52) at 1. I have already ruled that the OSHA regulation is not admissible. *See* Section I(D) above. With respect to the remaining items, the plaintiff contends that they are irrelevant or, in the alternative, that the probative value of such evidence is substantially outweighed by the dangers of unfair prejudice, confusion of the issues or misleading the jury under Fed. R. Evid. 403. Training Motion at 2. Because the defendant stated in its final pre-trial memorandum that "it is unclear from the evidence whether Mr. Brown was trained on operation of the Crown lift truck as required by federal regulations," the plaintiff argues that the defendant has "conceded that there is insufficient evidence . . . to make the existence of such training more probable or less probable" and that such evidence is therefore irrelevant. *Id.* at 2. That conclusion does not follow from the premise, but my ruling on the admissibility of the OSHA regulation renders moot any argument based on that regulation.

The plaintiff next contends that "there is admitted insufficient evidence one way or the other as to the nature of Mr. Brown's training by Prime Tanning," rendering any evidence concerning the employer's training of Thomas Brown not probative. Training Motion at 3-4. She provides no citation to the record to support this assertion. She goes on to state that the defendant's "training manual and alleged standards are of no authoritative value" and are not an appropriate measure by which a jury could assess the employer's training as provided to Thomas Brown. *Id.* She provides no

citation to authority for and no explication of this conclusory statement. She then goes on to assert that "there is no evidence to establish . . . that Crown's training manual . . . was ever offered, provided, or known to Prime Tanning, or that Crown offered at any time to assist Prime Tanning with respect to training on the Crown stand-up rider in its possession." *Id*. at 4.

The defendant responds that "discovery has revealed that the plaintiff [sic] was trained with training materials drafted by Nissan," which differ in significant respects from those provided by the defendant. Crown Equipment Corporation's Opposition to the Plaintiff's Motion *In Limine* to Preclude Reference, Inquiry, or Evidence as to Any Claim of Alleged Inadequate Forklift Training, etc. ("Training Opposition") (Docket No. 70) at 3-4. The plaintiff has raised claims of strict liability and failure to warn. Complaint (Exh. A to Notice of Removal (Docket No. 1)) ¶¶ 18-21, 23. The content of the defendant's training manual for the forklift at issue is clearly relevant to those two claims. The defendant states that it "intends to show that Prime Tanning was in possession of the Crown Operator's Manual, and that a reasonable employer in Prime Tanning's position would have known that Crown [t]raining materials were available upon request and should be obtained." Training Opposition at 4. If evidence to support either of these factual assertions is presented, and assuming an adequate foundation is otherwise laid, there can be no question that the defendant's training manual is admissible. Even without such evidence, evidence concerning what training the employer provided to Thomas Brown is relevant and admissible in support of the defendant's defense of comparative negligence. If Thomas Brown was trained to use the forklift in a manner that could reasonably have prevented the accident, that could be evidence of his own negligence under the circumstances. On the other hand, if the defendant intends to claim that the employer's training of Thomas Brown, standing alone, was inadequate, that claim is not relevant either to the defendant's attempts to provide training

materials that included a warning of the hazard that caused Thomas Brown's death or to his comparative negligence.

In apparent response to the defendant's assertion that "Prime Tanning cannot confirm Mr. Brown's attendance at the relevant training sessions" and that this "strongly suggests that Mr. Brown did not receive the required training," *id*. at 3, the plaintiff contends that the defendant's "admission" in its final pre-trial memorandum bars it from presenting such evidence. Plaintiff's Reply Brief in Support of Her Motion In Limine to Preclude Reference, Inquiry, or Evidence as to Any Claim of Alleged Inadequate Forklift Training, etc. (Docket No. 100) at 1. This position puts far too much weight on the statement in the final pre-trial memorandum, which in any event may not be interpreted as an admission of anything more than that the evidence on this point could be interpreted in two opposing ways. There is no requirement that the relevant evidence on a given point be "clear" — capable of only one interpretation — before it may be admitted. In her reply memorandum, the plaintiff argues for the first time that the "worker's compensation exclusivity bar" must be considered in connection with this motion. *Id*. at 3. As I have already noted, I will not consider arguments raised for the first time in reply memoranda.

The motion is granted as to OSHA regulations and otherwise denied. Counsel for the defendant are warned, however, that the general question whether the employer provided adequate training to Thomas Brown is not at issue in this case; rather, the questions are whether the defendant provided adequate warnings and training materials with its product and whether training in accordance with those materials could have been provided to Thomas Brown and, if provided, could have prevented the accident which caused his death. Evidence that Thomas Brown did not attend a training session or training sessions, for example, may be evidence of comparative negligence if he chose not

to attend but may also be evidence of irrelevant negligence by his employer if the employer made no effort to ensure that all employees who might use the forklift were trained in its use.

### G.  Statutory Damages Caps

The plaintiff requests that she be allowed to refer to the caps applicable to damages claims under 18-A M.R.S.A. § 2-804 and that the court instruct the jury about these caps.  Plaintiff's Motion for Court to Allow Reference and Jury Instructions During Trial Of/As to the Statutory Caps Applicable to her Damages Claims (Docket No. 53) at 1.  She states that "[i]nforming the jury of these caps is allowed under Maine law" and cites a reported case, *id.*, in which the Maine Law Court upheld a trial court's informing the jury of the maximum award allowed for loss of comfort and society under the wrongful death statute because that court also instructed the jury that it could not shift damages in excess of the cap from one category to another, *Pierce v. Central Maine Power Co.*, 622 A.2d 80, 83 (Me. 1993).  However, nothing in that opinion suggests that a plaintiff is entitled to such an instruction upon request.  In response to the defendant's objection to her request, Crown Equipment Corporation's Opposition to the Plaintiff's Motion For Court to Allow Reference and Jury Instructions, etc. (Docket No. 64), the plaintiff asserts that the defendant "would have the jury deliberate under some fiction that there may be unlimited awards on some of Plaintiff's claims." Plaintiff's Reply Brief in Support of her Motion for Court to Allow Reference and Jury Instructions, etc. (Docket No. 83) at 1.

The *Maine Jury Instruction Manual* (4th ed. 2005), written and maintained by Justice Alexander of the Maine Supreme Judicial Court, includes no instruction on the statutory damages caps on wrongful death claims.  In fact, Justice Alexander says:

> Consistent with the law that the consequences of verdicts are not the concern of juries, the better choice appears to be that juries should not be told about caps, multipliers or the availability (or unavailability) of attorneys fees depending upon findings the jury makes.  Disclosure of caps or

> multipliers risks diverting the jury's attention from issues they must decide to specific numbers, calculations or compromise findings generated by discussion of the caps or multipliers.

*Id*. Comment, §7-101, at 7-109.  This court should be guided by Justice Alexander's interpretation of Maine law on this point, in the absence of a strong reason to disregard that authoritative interpretation.  No such reason has been proffered by the plaintiff here.  The motion is denied.  No mention of the statutory caps is to be made in the presence of the jury.

### H.  Demonstrative Aids

The plaintiff moves to exclude "Crown's power point materials or other materials, documents, demonstrative aids or evidence partially or fully illustrating or containing excluded opinions of Jeffrey J. Croteau and/or bases or facts underlying such opinions."  Plaintiff's Motion In Limine to Exclude Power Point Materials or Other Materials, etc. (Docket No. 54) at 1.  In an argument remarkable for its brevity,[9] she asserts that "[such] materials  . . . have no place at trial under the Court's 7/14/06 order."  *Id*.  This is an apparent reference to my order dated July 13, 2006 which is discussed briefly above.

The defendant responds that it intends to present certain demonstrative aids "that illustrate opinions reasonably disclosed by Mr. Croteau in Crown's Expert Disclosures dated July 14, 2006" and provides copies of such materials.  Crown Equipment Corporation's Opposition to the Plaintiff's Motion *In Limine* to Exclude PowerPoint Materials or Other Materials, etc. (Docket No. 71) at 1, Exh. A thereto, & Docket No. 73.  In the absence of any specific objection to any of these materials, the plaintiff's motion is denied.

---

[9] The plaintiff has filed no reply to the defendant's opposition to this two-sentence motion.

## I. Crown's General Safety Policies and Practices

The plaintiff seeks to exclude any references to the defendant's "alleged general safety practices, policies, procedures, reputation for safety or safety matters pertaining other than to the risk of horizontal intrusion at issue in this case."  Plaintiff's Motion In Limine to Exclude Reference by Crown or its Counsel to Crown's Alleged General Safety Practices, Policies, Procedures, Reputation for Safety or Safety Matters Pertaining Other than to the Risk of Horizontal Intrusion at Issue in This Case (Docket No. 55) at 1.  She contends that such matters "have no probative value" and reference to them "would unduly prejudice Mrs. Brown under F[ed]. R. E[vid]. 403 and mislead or confuse the jury."  *Id*. at 1-2.  She asserts that the only reason for the defendant to refer to such matters "is to lessen the sting that will otherwise result from a jury learning of the substantial safety hazard that exists in this case . . . and Crown's knowledge thereof."  *Id*. at 2.

The defendant's response asserts that the plaintiff's motion "does not define . . . what references to general safety policies or reputation for safety she seeks to exclude."  Crown Equipment Corporation's Opposition to the Plaintiff's Motion *In Limine* to Exclude Reference by Crown or its Counsel to Crown's Alleged General Safety Practices, etc. ("Safety Opposition") (Docket No. 63) at 1.  I agree that the initial motion is cast in terms far too general and far-reaching to be granted before trial.  In her reply, the plaintiff identifies the following as examples of the "generalized, self-serving statements" that should be excluded:

(1)  "Crown prides itself on the safety of its equipment."

(2)  "We are careful with all of our products."

(3)  "We take pride in training every one of our employees."

(4)  "We ensure that all of our employees are up to date on safety."

(5)  "Safety is Crown's #1 focus."

(6)  "All of our machines are safe for operator use, it is dependent on the operator to use our machines safely."

(7)  "We design our machines with the safety of its [sic] operators at the front of our minds." Plaintiff's Reply Brief in Support of Her Motion In Limine to Exclude Reference by Crown or its Counsel to Crown's Alleged General Safety Practices, etc. (Docket No. 82) at 1-2.  She seeks to limit references to safety to the context of the risk of horizontal intrusion during the use of the defendant's stand-up forklift used by the plaintiff's decedent.  *Id.* at 2.

As stated, the statements numbered 3 and 4 in the above list are irrelevant; the training of Crown's own employees is not at issue in this proceeding nor could it serve, so broadly stated, to illustrate or illuminate any of the matters at issue here.  The remaining five statements present a closer issue.  The defendant states that the plaintiff has identified the defendant's Injury and Loss Prevention Policy as a trial exhibit and asked one of its expert witnesses at deposition about this policy.  Safety Opposition at 2.  If the plaintiff chooses to offer evidence about the defendant's own safety policies or procedures, the defendant may certainly offer evidence about those matters.  If Crown can show that its safety policies are relevant to any of the plaintiff's specific claims, reference to those policies will be permitted.  This would not unduly prejudice the plaintiff, nor would it necessarily confuse or mislead the jury.  At the present time, other than the statements numbered 3 and 4 above, as to which the motion is granted, it is not possible to discern what references to these materials may or may not be admissible.  Further resolution of this motion must wait until trial, where counsel for the plaintiff assumedly will raise this objection at the appropriate time or times.

### J.  Matters that were "Obvious"

The plaintiff seeks to exclude "any references, remarks or suggestions by Crown at the trial . . . as to what matters were allegedly 'obvious' to . . . Thomas Brown."  Plaintiff's Motion In Limine to

Exclude References, Remarks or Suggestions by Crown and its Counsel as to What Matters Were Allegedly "Obvious" to Thomas Brown (Docket No. 56) at 1.  She contends that such remarks "are entirely speculative and . . . substantially prejudicial."  *Id*.  She asserts that the defendant "has no way of knowing" what was obvious to Thomas Brown and, without citation to authority, states that such statements could only be "intended to unfairly influence the jury."  *Id*.

The defendant responds that it has a "viable defense that any alleged hazard associated with the use of the subject lift truck in the area where the accident occurred was obvious or readily discernable by Mr. Brown."  Crown Equipment Corporation's Opposition to the Plaintiff's Motion *In Limine* to Exclude References, Remarks, or Suggestions by Crown and Its Counsel as to What Matters Were Allegedly "Obvious" to Thomas Brown (Docket No. 67) at 1.  It contends that it "must be afforded the opportunity to establish that any alleged risk of horizontal intrusion accompanying the use of the subject lift truck in the chemical storage area" — the mechanism of the fatal accident — "was obvious to Mr. Brown and to his employer."  *Id*. at 2.  Under Maine law, a manufacturer has no duty to warn of a danger that is obvious and apparent.  *Lorfano v. Dura Stone Steps, Inc.*, 569 A.2d 195, 197 (Me. 1990).  Strictly speaking, what is "obvious and apparent" should be determined from the point of view of a reasonable user of the product under the circumstances prevailing at the time of the injury giving rise to the claim.  The assertion that the danger "was obvious to Mr. Brown and to his employer" is based on an unobjectionable assumption that both were reasonable users.

Contrary to the plaintiff's argument, Plaintiff's Response to Crown Equipment Corporation's Opposition to the Plaintiff's Motion In Limine to Exclude References, Remarks, or Suggestions by Crown and its Counsel as to What Matters Were Allegedly "Obvious" to Thomas Brown (Docket No. 99) at 1, a suggestion as to what was "obvious" to Thomas Brown in this context is not objectionable because it is not or cannot be offered by a witness having "personal knowledge of Tom's appreciation

of the hazard."  To engraft onto the defense that the risk of injury was obvious and apparent a requirement that the party invoking the defense prove that the risk was actually obvious and apparent to the injured (or deceased) individual would be to make the defense unavailable as a practical matter in all cases in which the user is deceased.  The fact that another forklift operator "has testified that until Tom Brown's death even he did not appreciate that he could slip underneath a rack and be crushed," *id*. at [2], goes to the question whether a reasonable person in Thomas Brown's place would have perceived the risk, not to whether the defendant may invoke the defense.  Nothing in *Koken v. Black & Veatch Constr., Inc.*,  426 F.3d 39, 44-46 (1st Cir. 2005), the only authority cited by the plaintiff, suggests a different result.  Indeed, the plaintiff's emphasis in citing this case on the impropriety of counsel expressing his own opinion is irrelevant to the issue presented by her motion.

## K.  Dunlap Testimony

The plaintiff moves to exclude evidence or reference to the defendant's exhibits identified as numbers 9 and 10 in its final pre-trial memorandum[10] and any evidence related thereto.  Plaintiff's Motion In Limine to Exclude Reference, Inquiry or Evidence as to Dan Dunlap's Pivot Table, Estimated Hours of Usage, or "Incident Rate Analysis" Leading to, Supported by or Illustrated By These Documents ("Dunlap Motion") (Docket No. 51) at 1.  She avers that these documents, entitled "RC and RR Truck Pivot Table" and "Estimated Hours of Operation for Crown Stand-up End Control Trucks (U.S. Only)," "represent an analysis undertaken by Dan Dunlap, Crown's Manager of Product Safety" which should be excluded because Dunlap "admittedly did not seek to ascertain the risk of horizontal intrusion to an operator of a Crown stand-up rider driving an unguarded forklift in an area where horizontal racks, beams, or other objects exist between 51 inches and 60 inches from the floor

---

[10] These documents appear on the amended  Consolidated Trial Exhibit List (Docket No. 104) as Exhibits D-6 and D-7.

and, therefore, at height above the skirt of the operator's compartment." *Id*. at 1-2.  She asserts that this is the only risk at issue in this case, rendering Dunlap's analyses "entirely irrelevant." *Id*. at 2.

The plaintiff contends that the defendant will seek to introduce these documents "to support a claim that a much smaller risk of horizontal intrusion existed as to Thomas Brown's accident than claimed by Mrs. Brown and purportedly known to Crown." *Id*. at 3.  That characterization would appear to make the exhibits relevant, not irrelevant.  However, she goes on to assert that Dunlap "has all but admitted" that these documents "do not attempt to measure the risk of an operator driving an unguarded Crown stand-up rider in an area where shelves were 51 and a half inches from the floor or higher," which she contends is the only relevant risk analysis.  *Id*. at 3 (emphasis omitted).  She also finds it important that "Dunlap admits that in creating/producing [these documents] he did not attempt to measure the risk to an operator driving a Crown stand-up rider that lacked 4th corner protection above the skirt of the machine."  *Id*. at 4 (emphasis omitted).  She asserts that Dunlap's analyses considered only machines with fourth corner guards, which the machine operated by Thomas Brown did not have.  *Id*.

The defendant responds that  Dunlap's analyses "do, in fact, analyze the rate of horizontal intrusion accidents as compared to the estimated hours of usage of Crown lift trucks and as compared to other types of accidents involving Crown lift trucks."  Crown Equipment Corporation's Opposition to the Plaintiff's Motion *In Limine* to Preclude Reference, Inquiry, or Evidence as to Dan Dunlap's Pivot Table, etc. ("Dunlap Opposition") (Docket No. 66) at 2.  It asserts that "[t]he pivot table describes the quantities of lift trucks that were made each year and provides an estimate of the hours of usage of the lift trucks," which is data that Dunlap uses "to analyze the various types of accidents that can occur during the operation of Crown stand-up rider lift trucks." *Id*.  It contends that the documents "are relevant to decisions made by Crown with respect to the design and manufacture of the RC stand-

up rider at issue and product upgrades that were incorporated into the RC design following the manufacture of the subject lift truck in 1989." *Id*. at 3. It argues that, to the extent that evidence of "design enhancements" made after the sale of the truck involved in this case will be admitted, it should be allowed to introduce these documents as evidence of the information on which it relied in developing the upgrades.

I agree that the defendant should be allowed to introduce evidence with respect to its development of post-sale upgrades for the lift truck model involved in this case. I also agree with the defendant's assertion, *id*. at 4, that the plaintiff's arguments with respect to these exhibits go to their weight rather than to their admissibility. The plaintiff's description of the subject matter relevant to the issues in this case is too narrowly drawn, particularly when she is asking the court to exclude documents before trial, without any opportunity for the defendant to provide an evidentiary context for those exhibits. The motion is denied, without prejudice to its reassertion during trial under appropriate circumstances.

### III. Conclusion

In summary, my rulings on the fifteen motions *in limine* currently pending are as follows: Docket No. 43 — denied; Docket No. 44 — denied, except as to the testimony of Dr. Ziernicki; Docket No. 45 — ruling reserved; Docket No. 57 — granted as to ANSI standard, denied as to OSHA regulation; Docket No. 46 — ruling reserved under specific conditions; Docket No. 47 — denied; Docket No. 48 — ruling reserved; Docket No. 49 — denied; Docket No. 50 — granted; Docket No. 52 — granted as to OSHA regulations and otherwise denied; Docket No. 53 — denied; Docket No. 54 — denied; Docket No. 55 — ruling reserved except as to Statements 3 and 4 as listed in the plaintiff's reply memorandum, as to which the motion is granted; Docket No. 56 — denied; Docket No. 51 — denied.

Dated this 9th day of August, 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge