*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

*CLAIRE BROWN,*                )
                               )
              *Plaintiff*      )
                               )
*v.*                           )          *Docket No. 05-158-P-DMC*
                               )
*CROWN EQUIPMENT CORP.,*       )
                               )
              *Defendant*      )


*MEMORANDUM DECISION ON MOTION FOR JUDGMENT AS A MATTER OF LAW OR
FOR A NEW TRIAL*[1]


Trial was held in this action from August 16 to August 28, 2006.  Docket.  The jury verdict was entered on the docket on August 28, 2006.  Docket No. 156.   Judgment in favor of the plaintiff was entered on September 8, 2006.  Docket No. 170.  On September 20, 2006 the defendant filed the instant motion for judgment as a matter of law and in the alternative for a new trial.  Docket No. 172.  I deny the motion.

### I.  Judgment as a Matter of Law

The motion is properly brought pursuant to Fed. R. Civ. P. 50(b).  A motion for judgment under Rule 50(b) may be granted only when there is no legally sufficient evidentiary basis for a reasonable jury to find as it did.  *Richards v. Relentless, Inc.*, 341 F.3d 35, 41 (1st Cir. 2003) (discussing judgment under Rule 50(a), which has the same standard as Rule 50(b)).  The court must view the evidence in the light most favorable to the party in whose favor the jury decided and draw all

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge David M. Cohen conduct all proceedings in this case, including trial, and to order the entry of judgment.

reasonable inferences in her favor.  *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 565 (1st Cir. 2003).

In this case, the jury decided in favor of the plaintiff only on her claim that the defendant negligently

failed to warn foreseeable users of the lift truck it manufactured of dangers involved in its operation

that became known to the defendant after it sold the truck.  Verdict (Docket No. 156).

### A.  Post-Sale Duty to Warn

As it did before trial,  *see* Defendant's Motion *In Limine* to Prohibit the Introduction of

Evidence About Design Features of Lift Trucks, Product Up-Grades and Product Informational

Bulletins Developed After the Initial Sale of the Subject Lift Truck (Docket No. 43) and Defendant's

Memorandum of Law in Support of Final Pretrial Memorandum Regarding Post-Sale Duties (Docket

No. 33), the defendant  contends, here in conclusory fashion, that the Maine Law Court has not

recognized and would not recognize a cause of action for a negligence-based post-sale duty to warn

with respect to product liability claims.  Crown Equipment Corporation's Renewed Motion for

Judgment as a Matter of Law, etc. ("Motion") (Docket No. 172), at 3.

This argument was fully considered and rejected before trial.  Memorandum on Motions *In

Limine* (Docket No. 123) at 1-4.  The defendant offers no reason why I should change my view.

### B.  Discharge of Duty

The defendant next contends that it discharged as a matter of law any post-sale duty to warn

about the risk of horizontal intrusion into the area of the lift truck occupied by the operator because

"the evidence established that Crown in fact did warn Prime Tanning [Thomas Brown's employer]

about the hazard of horizontal intrusion," because Prime Tanning's personnel were "obligated by

federal law" to read the warning about horizontal intrusion in the operator's manual provided by the

defendant.  Motion at 4, 6-13.  However, it was entirely possible for the jury to conclude that the

warning included in the manual was inadequate.  The jury was instructed in this regard as follows:

2

"Warnings and instructions, if necessary, should be clear, understandable and effectively communicated to the actual product user to be considered adequate." Jury Instructions (Court Exh. 1) at 12.  In this case, it is not possible to conclude that the warning in the operator's manual met this standard as a matter of law.  The jury could reasonably have found that warning to be inadequate.

### C.  Lack of Causal Connection

The defendant goes on to assert that there was no causal connection between any alleged failure to warn and the death of Thomas Brown

> because the person responsible for placing the lift truck in the chemical storage area (Dan Labbe) had actual knowledge about the risk of horizontal intrusion, and the person responsible for overall safety and training at Prime Tanning (Ron Allard) testified that if he had read the warning which was contained in the Crown operator's manual in Prime Tanning's possession, as he was obligated by OSHA regulations to do, Mr. Brown's accident would not have occurred.

Motion at 4.  However, neither reason, as presented, is conclusive on this issue.  The jury could well have discounted Allard's cited testimony and concluded that Thomas Brown would have used the lift truck as he did on the day of his death even if Allard had read the warning in the operator's manual. In addition, as previously noted, the jury could have concluded that the warning in the manual was inadequate, so that a reasonable person in Allard's position either would not have read it or would not have seen the need to take protective steps after reading it.  The jury could also conclude that Allard's belief that he would have prevented the accident, stated with the benefit of hindsight, was not reasonable.  As for the defendant's assertion that "the persons at Prime Tanning responsible for the lift truck's use in the facility and the training of operators required by federal law [Allard and Labbe] had actual knowledge of the risk of horizontal intrusion (the very risk about which the plaintiff claimed Crown failed to warn)" before the accident, *id*. at 12, Allard specifically testified that before the accident he "did not understand that with a certain design of a stand-up [lift truck] with a certain rack

there was a potential risk."  Trial Transcript, Vol. III at 446.  Labbe testified that "the hazard of underride intrusion" had not "been expressed" to him before the accident.  *Id*., Vol. I at 92-93.[2]  The jury was entitled to credit this testimony.

The defendant's first assertion draws too broad a conclusion from the testimony cited by the defendant in its support.  That testimony, Motion at 5-6, concerned the modification of the lift truck to allow it to perform a specific function in an area of "drive-in" racks, with very specific space limitations that were not present in the general storage area where the accident occurred.  Labbe's "awareness of the potential risk of horizontal intrusion," *id*. at 5, was very specifically the risk of horizontal intrusion inherent in that very specific and limited area outfitted with "drive-in" racks, and nothing in the quoted testimony even suggests that this awareness necessarily applied as well to the area in which the accident occurred.  In addition, Labbe's quoted testimony about the warning in the operator's manual, *id*. at 6, says nothing about the adequacy of that warning to inform him about the risk of the type of horizontal intrusion that killed Thomas Brown; in it, Labbe merely confirms that the questioner read the warning in the manual correctly.  As the plaintiff points out, Plaintiff's Response to Defendant's Renewed Motion for Judgment, etc. ("Opposition") (Docket No. 187) at 22, Labbe also testified that the warning about horizontal intrusion hazard on page 3 of the manual did not concern "essentially the same exact thing as what [the operator of the modified lift truck in the drive-in application] conveyed to [him] and Mr. Allard and others . . . [as] his concern that in the drive-in rack situation there was the potential hazard of horizontal intrusion from the angle iron . . . ."  Trial Transcript, Vol. I at 150.

---

[2] Labbe responded "No" to the question "Prior to this document had the hazard of underride intrusion ever been expressed to you?" Trial Transcript Vol. I at 93.  "This document" was Exhibit P-16, of which Labbe earlier testified that he first became aware "[t]he week after Tom's death."  *Id*. at 87.

### D.  Information about Product Upgrades or Enhancements

The defendant contends that there is no duty to provide "remote purchasers" of its lift trucks with information about the availability of product upgrades or enhancements developed after the sale of a product that was not defective, unreasonably dangerous or negligently designed at the time of its initial sale, and that since the jury found that the lift truck in this case was not defective or unreasonably dangerous at the time of its initial sale, the plaintiff's emphasis at trial on the availability of a fourth corner extension kit developed after the initial sale permitted the jury to find it liable on the basis of that forbidden theory.  Motion at 13.  This argument appears to be based on the assumption that "Crown discharged as a matter of law any post-sale duty to warn Prime Tanning or Thomas Brown of the risk of horizontal intrusion in this case," *id.*, a contention that I have rejected. Accordingly, this argument must also fail.

To the extent that the defendant's argument may reasonably be construed to apply even if it did not establish as a matter of law that it had discharged its post-sale duty to warn, the comments to the section of the Restatement (Third) of Torts: Products Liability, on which my decision that such a duty would be recognized by the Maine Law Court and the jury instructions on this issue were both based, make clear that not all evidence relevant to the question whether such a duty has been discharged is objectionable merely because it could also be used to demonstrate a theory that the manufacturer had "an unbounded post-sale duty," Motion at 15, to advise remote purchasers of every post-sale product upgrade or enhancement.  The Restatement makes clear that the post-sale duty to warn arises only if a reasonable person in the seller's position would provide such a warning and that a reasonable person would provide a warning if the seller knows or reasonably should know that the product poses a substantial risk of harm to persons, that those to whom a warning might be provided can be identified and can reasonably be assumed to be unaware of the risk of harm, that a warning can be effectively

communicated to and acted on by those to whom it might be provided, and that the risk of harm is sufficiently great to justify the burden of providing a warning.  Restatement (Third) of Torts: Prod. Liab. § 10 (1998).  The plaintiff provided evidence of each of these elements in this case.[3]

The Reporters' Note to the comments to this section of the Restatement includes the following:

> This Section does not draw a sharp distinction between failure to warn of risk and failure to inform about safety improvements.  If a newly discovered risk imposes risk of serious harm and safety improvements can be practically implemented, there may in certain instances be a duty to inform the buyer of the availability of such safety improvements.

*Id*. Reporters' Note to comment a.  This was such a case.  The plaintiff provided evidence about the fourth corner extension kit to demonstrate that a practical solution to the problem of deaths and injuries resulting from horizontal intrusion that had been reported to the defendant was developed and available.  In addition, contrary to the defendant's assertion that "the Court's jury instructions do not include any guidance to the jury on how it should factor into the adequacy analysis Crown's alleged failure to advise of the product improvement," Crown Equipment Corporation's Reply to the Plaintiff's Response, etc. (Docket No. 191) at 5, the jury instructions included the following with respect to adequacy:

> Warnings and instructions, if necessary, if necessary, should be clear, understandable and effectively communicated to the actual product user in order to be considered adequate.  The warning must advise the user of the risks or dangers associated with the product *and offer the user specific directions for the product's safe use.*

Jury Instructions at 12 (emphasis added).  One possible "specific direction" available to the defendant well before Thomas Brown's death was the availability of the fourth corner extension.

None of the case law from other jurisdictions cited by the defendant in support of its argument on this point persuades me that the defendant is entitled to judgment as a matter of law on this basis in

---

[3] In addition, the jury was instructed that the plaintiff must prove each of these elements in order for it to find in her favor on her (*continued on next page*)

this case. *See Williams v. Monarch Mach. Tool Co.*, 26 F.3d 228, 231-32 (1st Cir. 1994) (Massachusetts law; rejecting entirely claim based on post-sale duty to warn where product not shown to be negligently designed as originally sold); *Romero v. International Harvester Co.*, 979 F.2d 1444, 1450-52 (10th Cir. 1992) (holding that Colorado law imposes post-sale duty to warn only when product was defective and unreasonably dangerous at time it was manufactured and sold; Colorado law recognizes no "rigid distinction" between negligence and strict liability failure to warn concepts); *Habecker v. Copperloy Corp.*, 893 F.2d 49, 54 (3d Cir. 1990) (Pennsylvania law; trial court properly eliminated issue of failure to retrofit and not issue of failure to give post-sale warning; no discussion of circumstances); *Moorehead v. Clark Equip. Co.*, 1987 WL 26158 (N.D. Ill. Dec. 2, 1987), at *2-*3 (Illinois law does not recognize continuing duty of manufacturer to notify prior purchasers of new safety devices); *Wilson v. United States Elevator Corp.*, 972 P.2d 235, 240-41 (Ariz. 1998) (no liability under state law for failure to inform owners of product not unsafe at time of manufacture about subsequent development and production of allegedly superior safety device; distinguishing case in which manufacturer "later discovers that his product poses a clear threat to the safety of users thereof" or in which product was "inherently dangerous when sold and as to which there is a later technological breakthrough and a safe design is then discovered"); *Reeves v. Cincinnati, Inc.*, 528 N.W.2d 787, 790 (Mich. App. 1995) (no latent defect as to which a duty to warn exists when jury found that product was not defectively designed); *Collins v. Hyster Co.*, 529 N.E.2d 303, 306 (Ill. App. 1988) (Illinois law does not impose duty to warn beyond time product left manufacturer's control unless manufacturer knew or should have known product was defective at that time); *Lynch v. McStome & Lincoln Plaza Assocs.*, 548 A.2d 1276, 1281 (Pa. Sup. 1988) (manufacturer not negligent

---

negligent-failure-to-warn claim. Jury Instructions at 11-12.

if product functions properly at time of accident even when manufacturer knew or should have known of alternative safer design and does not retrofit sold products or notify owners of new design).

## II.  New Trial

### A.  Jury Instructions

The defendant asserts that the jury was instructed erroneously with respect to the failure-to-warn claim in that the court both "instructed the jury that it could consider Crown's alleged failure to advise Prime Tanning of the fourth corner extension as part of the plaintiff's negligent failure to warn claim" and "failed to provide any instruction setting forth the elements of the failure to advise theory it allowed the jury to consider."  Motion at 17.  It contends that the court "blended . . . together" claims of post-sale duty to warn and of failure to advise about post-sale safety  improvements in its instructions, *id.* at 18, yet it does not identify the instructions that it contends constitute the alleged error.

Assuming that the defendant means to discuss the instruction given on the failure-to-warn claim, that instruction cannot reasonably be read to include a failure-to-advise claim of the sort posited by the defendant.  The instruction, in its entirety, reads as follows:

### Negligent Failure to Warn

In order for you to find in the plaintiff's favor on her claim that Crown Equipment Company was negligent in failing to warn, subsequent to its original sale of the lift truck at issue in this case, of a horizontal intrusion hazard associated with the operation of that lift truck the plaintiff must prove, by a preponderance of the evidence, that, prior to Mr. Brown's August 2, 2003 accident:

1.      Crown knew or reasonably should have known that the lift truck posed a substantial risk of harm to persons resulting from a horizontal intrusion;

2.      Crown was able to identify Prime Tanning as the owner of the lift truck and Prime Tanning could reasonably be assumed to be unaware of the risk of such horizontal intrusion injuries;

      3.     Crown could have effectively communicated a warning regarding that risk to Prime Tanning and Prime Tanning could have acted on such a warning; and

      4.     the risk of harm resulting from a horizontal intrusion was sufficiently great to justify imposing on Crown the burden of providing such a warning.

That said, I also instruct you that a manufacturer has no duty to warn of a danger that is obvious and apparent, unless it is foreseeable that people will, nevertheless, proceed to encounter that hazard out of necessity, for lack of a safe, apparent alternative, or through momentary inadvertence.

Warnings and instructions, if necessary, should be clear, understandable and effectively communicated to the actual product user in order to be considered adequate.  The warning must advise the user of the risks or dangers associated with the product and offer the user specific directions for the product's safe use.  Where a warning is given, the manufacturer may reasonably assume that it will be read and heeded.  Correspondingly, where an adequate warning is required but has not been given, you must presume that had an adequate warning been given the user would have read and heeded it, unless the defendant proves by a preponderance of the evidence that the user would not have done so.

In connection with the negligent-failure-to-warn claim, you should understand that the plaintiff is not claiming that Crown Equipment Corporation had an obligation to make modifications to the lift truck at its expense as in a product recall.

I have already instructed you on the meaning of "legal cause."

Jury Instructions at 11-13.  Nowhere in this instruction is the jury explicitly told that "it could consider Crown's alleged failure to advise Prime Tanning of the fourth corner extension as part of the plaintiff's negligent failure to warn claim."  Motion at 17.  If the jury had been told that it may *not* consider the fourth corner extension kit in connection with this claim, for the reasons already discussed such an instruction would have been an erroneous statement of the law governing the claim, as it is set forth in the Restatement.

The defendant goes on to assert that "[t]he Court provided no direction to the jury as to what the plaintiff was required to prove in order to prevail upon her failure to advise theory."  *Id.* at 19.  To

the contrary and as already noted, the instruction quoted above provides all of the elements of the claim as set forth in the Restatement.   Contrary to the plaintiff's assumption, *id*., the instruction given does not impose "a duty to advise of product improvements."   *Id*.   The crux of this argument is apparently the defendant's "continu[ing] to believe its Instruction No. 22 correctly states the law that a manufacturer does not have a duty to advise users of product improvements developed after the product is manufactured and sold."   *Id*. at 20.   The defendant claims that the failure to give this requested instruction "violates Crown's right to due process and equal protection of the Law," *id*. at 20, but beyond some general and high-flown rhetoric about the duty of the court to instruct the jury as to the law, *id*. at 20-24, the defendant is remarkably silent as to *how* these constitutional rights were violated by the instructions given in this case.   To the extent that the argument is based on the court's asserted "abdication of its duty to instruct the jury as to the law," *id*. at 23, the instructions given make clear that no such abdication occurred.   The jury in this case was not "permitted . . . to determine the law."   *Id*. at 23.   The jury was instructed as to all of the elements of the claim asserted by the plaintiff. Nothing more was constitutionally required.

The defendant's initially-proposed jury instructions as submitted are not numbered, but do include a requested instruction entitled "No Duty to Retrofit."   Crown Equipment Corporation's Proposed Jury Instructions (Docket No. 95) at 17.   I assume that it means to refer to the proposed instruction number 22, also entitled "No Duty to Retrofit," in its second submission of proposed instructions.  Crown Equipment Corporation's Revised and Supplemental Proposed Jury Instructions (Docket No. 160) at 25.   The requested instruction follows:

> Often the design of products evolves over time as technology advances.  A manufacturer does not have a duty to advise users of design improvements developed after the product is manufactured and sold or to retrofit a product with a design product upgrade developed after the time of sale.

*Id.* Counsel for the plaintiff repeatedly denied any intent to claim that the defendant had a duty to retrofit the lift truck and nothing in the plaintiff's presentation of evidence nor in the statements of her counsel before the jury can reasonably be interpreted to make such a claim. Accordingly, no instruction with respect to a duty to retrofit was necessary.[4] The remainder of the proposed instruction cannot reasonably be read to tell the jury that they may not consider the fourth corner extension kit as evidence with respect to the duty-to-warn claim or that the kit can only be relevant to a claim of duty-to-advise, which is apparently what the defendant wanted the instructions to convey. In any event, I have already concluded that evidence of the existence of the fourth corner extension kit was relevant to the failure-to-warn claim, for the reasons already stated, so that an instruction such as that sought by the defendant would have been incorrect. The defendant's additional assertion that an instruction on a failure-to-advise claim "would have to include an instruction that the jury could not find for the plaintiff on that claim if the product was not defective at the time of first sale," Motion at 20, adds an element to the claim not present in the Restatement definition on which I relied and which I held that the Maine Law Court would be likely to adopt. I did not find, and do not believe, that the Maine Law Court would be likely to engraft this additional requirement, apparently adopted in a few states, onto the Restatement definition of the claim.

### B. Inadmissible Evidence; Improper Argument

The defendant's final salvo is directed at the admission of Exhibits P-16 and P-29 and an argument that "explicitly and implicitly communicated to the jury that, contrary to law, Crown had a duty to advise Prime Tanning about the availability of the fourth corner extension." Motion at 24. No citation to the transcript is given for this allegedly improper argument. In the absence of any citation

---

[4] Indeed, as noted above, the jury was instructed that the plaintiff was "not claiming that [the defendant] had an obligation to make modifications to the lift truck at its expense as in a product recall." Jury Instructions at 13.

to the specific portions of the voluminous transcript of the trial in this case that support the defendant's characterization of the plaintiff's argument, I will not consider this issue further.

With respect to Exhibit P-16, a document referred to as Product Reference 1.15, the defendant argues only that it was irrelevant and "highly prejudicial to Crown" because its admission "communicated to the jury that . . . Crown had a duty to advise Prime Tanning about the availability of the fourth corner extension." *Id*. at 24.   Exhibit P-16, Product Reference 1.15, does not in any way communicate to the jury that Crown had such a duty.  It merely presents "Application Solutions for First Rack Beam Above Power Unit and Crown Position on Rear Posts for Stand-Up Riders (Series RR, RS, RD, RC)."  Exhibit P-16 at 1.  At most, this exhibit demonstrates that by 1999 the defendant had information in printed form that it could have presented to Prime Tanning that warned of the possibility of horizontal intrusion and recommended "solutions" for this situation.  *Id*. at 2.  In no way does this document suggest the existence of any duty, but it is highly relevant to the third prong of the Restatement definition of the claim — whether a warning can be effectively communicated to and acted on by those to whom a warning might be provided.

Exhibit P-29 is Crown's internal Injury and Loss Prevention Policy.  The defendant contends that this policy does not establish a duty running from Crown to Thomas Brown and that accordingly the policy and the testimony about it were erroneously admitted.  Motion at 24-26.  The plaintiff responds that it "was appropriate for the jury to determine" whether "its introduction was not supported insofar as a claim under Section 323 of the Restatement (Second) of Torts."  Opposition at 6 n.2.  The point of this assertion is less than clear, but it is for the court to determine whether a proposed exhibit is admissible, not the jury.  The plaintiff goes on to contend that the exhibit "was supportive of Mrs. Brown's post-sale duty to warn claim as it evidenced . . . Dan Dunlap's job responsibilities as he understood them.  Dunlap was the Product Safety Coordinator for Crown . . .

who testified that he deemed no warning beyond telling an operator to drive safely necessary to prevent horizontal intrusion injuries and deaths." *Id*. I need not reach these arguments because the defendant did not object at trial to the admission of Exhibit P-29.[5] Trial Transcript, Vol. IV at 607-616. The defendant accordingly cannot be entitled to a new trial based on the claim now made that the document should not have been admitted. *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 610 (7th Cir. 2006) (defendant who does not object to admission of evidence during trial waives objection and cannot raise it for the first time in motion for new trial); *Athridge v. Rivas*, 421 F.Supp.2d 140, 151 (D.D.C. 2006) (same). *See also* Fed. R. Evid. 103(a)(1) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and . . . a timely objection or motion to strike appears of record . . . .").

### III. Conclusion

For the foregoing reasons, the defendant's motion for judgment as a matter of law or for a new trial is **DENIED**.

Dated this 7th day of November, 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

---

[5] Exhibit P-29 is a version of Exhibit P-29A from which the material upon which the defendant based its objection to the admission of Exhibit P-29A has been redacted. The defendant did not object to the admission of the redacted document.